ACCEPTED
15-25-00167-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/26/2025 8:28 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00167-CV

In the Fifteenth Court of Appeals

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/26/2025 8:28:49 PM
CHRISTOPHER A. PRINE
Clerk

**Shannon Medical Center,**
*Appellant,*

**v.**

**Michael Sickels and James Christopher Cole,**
*Appellees.*

On Appeal from the 51st Judicial District Court,
Tom Green County, Texas; Hon. Carmen Dusek, Presiding;
Trial Court No. A250014C

**Appellant's Brief**

David M. Walsh IV (Lead)
State Bar No. 00791874
dwalsh@kaktxlaw.com
Jeffery M. Kershaw
State Bar No. 24053279
jkershaw@katxlaw.com
Kershaw Anderson King, PLLC
12400 Coit Road, Suite 800, Dallas, Texas 75251
- and -
5113 Southwest Parkway, Suite 200, Austin, Texas 78735
(214) 347-4993—Phone (Dallas)
(512) 400-0334—Phone (Austin)
(214) 615-7361—Fax

**Counsel for Shannon Medical Center**

**Oral Argument Requested**

## Identities of Parties and Counsel

1. Appellant Shannon Medical Center

Initially represented in the trial court by:

Michael L. Atchley
State Bar No. 01397600
matchley@popehardwicke.com
Pope, Hardwicke. Christie,
Schell, Kelly & Taplett, LLP
500 West 7th Street, Suite 600
Fort Worth, Texas 76102
(817) 332-3245—Phone

Currently represented in the trial court by:

Jeffery M. Kershaw
State Bar No. 11355020
jkershaw@kaktxlaw.com
David M. Walsh IV
State Bar No. 00791874
dwalsh@kaktxlaw.com
Jaqueline A. Cockrane
State Bar No. 24142790
jcochrane@kaktxlaw.com
Kershaw Anderson King, PLLC
12400 Coit Road, Suite 800
Dallas, Texas 75251
(214) 347-4993—Phone
(214) 615-7361—Fax

Represented in this Court by:

David M. Walsh IV (Lead)
State Bar No. 00791874
dwalsh@kaktxlaw.com
Jeffery M. Kershaw

2

State Bar No. 11355020
jkershaw@kaktxlaw.com
Ana P. Romano
State Bar No. 24150010
aromano@kaktxlaw.com
Jaqueline A. Cockrane
State Bar No. 24142790
jcochrane@kaktxlaw.com
Kershaw Anderson King, PLLC
12400 Coit Road, Suite 800
Dallas, Texas 75251
(214) 347-4993—Phone
(214) 615-7361—Fax

2. Appellees Michael Sickels and James Christopher Cole

Represented at the trial court by:

Jason K. Burress
State Bar No. 24036292
Kyle H. Dreyer
State Bar No. 06119500
Kyle R. Hejl
State Bar No. 24035578
Brian L. Mincher
State Bar No. 24052669
J. Bart Smith
State Bar No. 24029840
Rachel Hatten
State Bar No. 24101883
Josh A. Flippin
State Bar No. 24084429
Griffin J. Scheumack
State Bar No. 24097168
Burress Law, PLLC
6952 Mediterranean Drive
McKinney, Texas 75072
Tel: (214) 726-0016

Fax: (214) 865-7336

E-mail: legal@mytexasfirm.com

Represented at the appellate court by:

Matthew J. Kita

State Bar No. 24050883

matt@mattkita.com

3110 Webb Ave Ste 150

Dallas, TX 75205-3503

Kyle Dreyer

State Bar No. 06119500

legal@mytexasfirm.com

Josh A. Flippin

State Bar No. 24084429

legal@mytexasfirm.com

Burress Law, PLLC

6952 Mediterranean Drive

McKinney, Texas 75072

# Table of Contents

Identities of Parties and Counsel   2

Index of Authorities   7

Statement of the Case   11

Statement Regarding Oral Argument   12

Issue Presented   12

Statement of Facts   17

Argument   23

A.   Standard of Review   23

B.   This Case Is a Health Care Liability Claim   24
Subject to the Requirements of Chapter 74 (Issue 1)

    1.   Sickels and Cole's allegations satisfy the   29
elements of a health care liability claim.

       a.   Sickels and Cole are claimants who sued   29
a hospital

       b.   Sickels and Cole alleged departures from   33
safety standards that have a substantive
nexus to the provision of health care

       c.   Sickels and Cole allege that departures   48
from safety standards proximately caused
their injuries

    2.   Sickels and Cole's artful pleading cannot   48
circumvent the requirements of Chapter 74

3.      Sickels and Cole were not employees of            53
        Shannon Medical Center (Issue 2)

C.      Sickels and Cole Failed to Serve Shannon Medical    63
        Center with a Chapter 74 Expert Report as Required
        by Chapter 74 (Issue 3)

Conclusion and Prayer                                       72

Certificate of Compliance                                   75

Certificate of Service                                      75

Appendix

    1. Order Denying Defendant's Motion to Dismiss

    2. Tex. Civ. Prac. & Rem. Code § 74.001

    3. Tex. Civ. Prac. & Rem. Code § 74.351

    4. Tex. Civ. Prac. & Rem. Code § 74.353

# Index of Authorities

**Cases:**

*Abshire v. Christus Health Se. Tex.*,          65
     563 S.W.3d 219 (Tex. 2018)

*Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*,    23-24
     46 S.W.3d 873 (Tex. 2001)

*Badiga v. Lopez*,        29, 64
     274 S.W.3d 681 (Tex. 2009)

*Baty v. Futrell*,        29, 63, 65
     543 S.W.3d 689 (Tex. 2018)

*Baylor Scott & White Hillcrest Med. Ctr. v. Weems*,    24, 29, 47
     575 S.W.3d 357 (Tex. 2019)

*Bowie Mem'l Hosp. v. Wright*,        65
     79 S.W.3d 48 (Tex. 2002)

*Christus Health Gulf Coast v. Carswell*,        30
     505 S.W.3d 528 (Tex. 2016)

*City of Alvin v. Fields*,        45
     No. 01-22-00572-CV, 2023 LX 54875
     (Tex. App.—Houston [1st Dist.] June 15, 2023, no pet.)

*Collin Creek Assisted Living Ctr., Inc. v. Faber*,    24, 28, 35
     671 S.W.3d 879 (Tex. 2023)

*Coming Attractions Bridal & Formal, Inc. v. Texas Health Res.*,    passim
     595 S.W.3d 659 (Tex. 2020)

*Constancio v. Shannon Med. Ctr.*,        32
     No. 03-10-00134-CV, 2012 WL 1948345,
     2012 Tex. App. Lexis 4339 (Tex. App.—Austin 2012,
     no pet.)

*Diversicare Gen. Partner, Inc. v. Rubio,*          27, 49
    185 S.W.3d 842 (Tex. 2005)

*Drennan v. Community Health Inv. Corp.,*          54, 60
    905 S.W.2d 811 (Tex. App.—Amarillo 1995)

*Farlow v. Harris Methodist Fort Worth Hosp.,*          56
    284 S.W.3d 903 (Tex. App.—Ft. Worth 2008)

*Fernil v. Bluebird Med. Enters., LLC,*          46
    714 S.W.3d 171 (Tex. App.—Houston [14th Dist.] 2024,
    pet. denied)

*Garland Cmty. Hosp. v. Rose,*          27, 49
    156 S.W.3d 541 (Tex. 2004)

*Garner v. Corpus Christi Nat'l Bank,*          63
    944 S.W.2d 469 (Tex. App.—Corpus Christi 1997, no writ)

*Harris Cnty. Hosp. Dist. v. McNew,*          *passim*
    No. 14-18-00868-CV
    (Tex. App.—Houston [14th Dist.] Feb. 27, 2020, no pet.)

*In re Allstate Indem. Co.,*          24
    622 S.W.3d 870 (Tex. 2021)

*Jelinek v. Casas,*          29, 64, 66
    328 S.W.3d 526 (Tex. 2010)

*Lake Jackson Med. Spa, Ltd. v. Gaytan,*          28, 46, 47
    640 S.W.3d 830 (Tex. 2022)

*Leibman v. Waldroup,*          26-27
    669 S.W.3d 20, 2025 Tex. Lexis 468 (Tex. 2025)

*Limestone Products Distribution, Inc. v. McNamara,*          57
    71 S.W.3d 308 (Tex. 2002)

8

*Loaisiga v. Cerda,*                      26, 27
    379 S.W.3d 248 (Tex. 2012)

*Omaha Health Care Center, LLC v. Johnson,*    27
    344 S.w.3D 392 (Tex. 2011)

*Redinger v. Living, Inc.,*    56
    689 S.W.2d 415 (Tex. 1985)

*Renaissance Med. Found. v. Lugo,*    53, 55
    719 S.W.3d 505 (Tex. 2025)

*Rogers v. Bagley,*    26, 46
    623 S.W.3d 343 (Tex. 2021)

*Ross v. St. Luke's Episcopal Hosp.,*    34, 35, 36, 45
    462 S.W.3d 496 (Tex. 2015)

*Scoresby v. Santillan,*    66
    346 S.W.3d 546 (Tex. 2011)

*St. Joseph Hosp. v. Wolff,*    62
    94 S.W.3d 513 (Tex. 2002)

*Tenet Hosps. Ltd. v. Balderrrama,*    72
    705 S.W.3d 256 (Tex. App.—El Paso 2024)

*Tex. W. Oaks Hosp., LP v. Williams,*    28, 30, 36
    371 S.W.3d 171 (Tex. 2012)

*Wigley v. Shannon Med. Ctr.,*    32
    No. 03-17-00086-CV, 2017 WL 5985501,
    2017 Tex. App. Lexis 11177 (Tex. App.—Austin 2017,
    no pet.)

*Yamada v. Friend,*    27, 49
    335 S.W.3d 192 (Tex. 2010)

**Statutes:**

Tex. Civ. Prac. & Rem. Code § 74.001(a)(2) .................... 29

Tex. Civ. Prac. & Rem. Code § 74.001(a)(10) .................... 25

Tex. Civ. Prac. & Rem. Code § 74.001(a)(11) .................... 26, 31

Tex. Civ. Prac. & Rem. Code § 74.001(a)(12)(A) .................... 26

Tex. Civ. Prac. & Rem. Code § 74.001(a)(13) .................... *passim*

Tex. Civ. Prac. & Rem. Code. § 74.001(a)(19) .................... 25

Tex. Civ. Prac. & Rem. Code § 74.351(a) .................... 14, 28, 64, 70

Tex. Civ. Prac. & Rem. Code § 74.351(b) .................... 29, 64, 73

Tex. Civ. Prac. & Rem. Code § 74.351(r)(6) .................... 29, 64

Tex. Civ. Prac. & Rem. § 74.353 .................... 71

Tex. Health & Safety Code § 401.002(1) .................... 51

Tex. Health & Safety Code § 401.002(4) .................... 51

Tex. Occ. Code § 151.002(a)(13) .................... 25

**Miscellaneous:**

Restatement (Second) of Torts § 414 (1965) .................... 56

**Statement of the Case**

Nature of the Case: Radiologists Michael Sickels and James Christopher Cole sued hospital Shannon Medical Center, alleging it failed to properly monitor, report, and restrict their exposure to radiation. CR. 4-12. A third party, Shannon Clinic, employed both radiologists to work at Shannon Medical Center. CR. 119-123. The dispute here is whether their claims are health care liability claims. CR. 7-9; 45-77.

Course of the
Proceedings: Sickels and Cole sued Shannon Medical. CR.4-12. Shannon Medical Center generally denied their allegations and, under Section 74.351 of the Texas Civil Practice & Remedies Code, moved to dismiss their health care liability claims for failure to serve the statutorily required expert report within 120 days of its answer. CR. 25-44. Sickels and Cole responded claiming (1) Shannon Medical Center, not Shannon Clinic, employed them, exempting their claims from the definition of a health care liability claim, (2) they did not allege health care liability claims but violations of the Texas Radiation Control Act and the Texas Administrative Code, (3) they served reports that satisfied the expert-report requirement. CR. 45-306. Shannon Medical Center filed a reply in support of its motion to dismiss explaining that it did not employ Sickels and Cole. CR. 308-311. At the hearing, the parties argued about whether the claims were health care liability claims. RR.5-59.

Trial Court's
Disposition: After taking the issue under advisement, the trial court denied the dismissal motion. CR. 314-315. This appeal followed.

11

## Statement Regarding Oral Argument

Oral argument will substantially aid the Court's decisional process. It will allow the parties to further explain their positions regarding the facts and the interplay of those facts with the health-care-liability-claim definitions. That discussion will help the Court conclude that Sickels and Cole's claims are health care liability claims and should have been dismissed with prejudice because they never served an expert report within 120 days of Shannon Medical Center's answer.

## Issues Presented

Issue 1: Chapter 74's broad definition of health care liability claim creates a presumption that a claim is a health care liability claim if it is against a physician or health care provider and implicates the defendant's conduct during a patient's care or treatment. Sickels and Cole sued Shannon Medical Center, a hospital, alleging it failed in its duty to properly monitor, report, and restrict their exposure to radiation while they treated patients. Considering the nature of their claims, did they allege health care liability claims as defined by Chapter 74 of the Texas Civil Practice & Remedies Code?

Issue 2: Control is the hallmark in determining whether a person is employed by another. How could Shannon Medical Center be considered Sickels and Cole's employer when Shannon Clinic—a third party—has employment contracts with Sickels and Cole, and their evidence never proved that Shannon Medical Center controlled their conduct in practicing medicine?

Issue 3: Because Sickels and Cole's claims were health care liability claims, Section 74.351 of the Texas Civil Practice & Remedies Code mandated their service of an expert report within the statutory deadline that explained the standard of care, the breach of the standard of care, and proximate cause. While Sickels and Cole served (voluminous) medical records on Shannon Medical Center, they never served an expert report within the statutory deadline. Did the trial court reversibly err by denying Shannon Medical Center's dismissal motion?

## Introduction

Two radiologists, Michael Sickels and James Christopher Cole, sued Shannon Medical Center for negligence for its failure to properly monitor, report, control, and restrict their exposure to ionizing radiation that they used in treating patients. CR.4-10. As a licensed hospital, Shannon Medical Center is a health care institution, making it a health care provider. The radiologists' claim that Shannon Medical Center failed to meet its duty is a safety-related claim directly related to health care. Their claims are health care liability claims.

As such, Section 74.351 required Sickels and Cole to serve an expert report and curriculum vitae within the 120-day statutory period. Tex. Civ. Prac. & Rem. Code § 74.351(a). Under the statute, their failure to do so mandated dismissal of their claims with prejudice and a statutory award of attorneys' fees and court costs. The trial court reversibly erred by denying Shannon Medical Center's dismissal motion.

Sickels and Cole deny that their claims are health care liability claims—using a variety of means to artfully plead around the statutory requirements. Their arguments are without merit. First, their claims satisfy the elements of a health care liability claim, proving that their

14

claims are health care liability claims. That is particularly true when considering the presumption that applies to claims against a health care provider during the treatment provided to a patient—exactly the genesis of Sickels and Cole's claims against Shannon Medical Center, i.e., that they sustained too much radiation exposure while treating patients. The *Ross* factors that guide whether a claim is a health care liability claim weigh strongly in favor of it being a health care liability claim. Any attempt by Sickels and Cole to evade the statutory requirements is improper artful pleading.

Second, Sickels and Cole try to circumvent the statute by claiming they were employees of Shannon Medical Center even though they have employment contracts with a third party, Shannon Clinic, and Shannon Medical Center's interactions with these two radiologists did not amount to controlling how they did their job. At best, those interactions are nothing more than a cooperative arrangement between a hospital and physicians on staff—the typical cooperative arrangement to provide health care to patients—and did not amount to control. Thus, this case is not within the health care statute's exception for claims between employers and employees. Because Sickels and Cole were not employees

15

of Shannon Medical Center, their claims were health care liability claims, requiring dismissal because they served no expert report within the statutory deadline.

Third, Sickels and Cole's service of thousands of pages of medical records could not satisfy the expert report requirement. None of the medical records—alone or collectively—contained the information to satisfy the elements of an expert report. And none of the pages amounted to service of a curriculum vitae. Perhaps more importantly, Sickels and Cole never served the medical records as though they were serving an expert report. Because Sickels and Cole never served an expert report, they could not receive a 30-day extension of the expert-report deadline. The trial court had no option but to dismiss their claim with prejudice and enter the statutory award of attorneys' fees and court costs for failure to serve an expert report. Instead of ruling as required by the statute, the trial court reversibly erred by denying Shannon Medical Center's dismissal motion. This Court should reverse.

## Statement of Facts

As with more interlocutory appeals, this appeal comes to the Court with limited information—essentially just what Sickels and Cole have alleged and the medical records they provided. Shannon Medical Center does not agree that their characterization of the events is accurate and specifically denies their allegations. But, at this interlocutory juncture with limited discovery and a limited record, Shannon Medical Center presents the following information to give the Court an understanding of what the radiologists claim occurred. But to be clear, Shannon Medical Center has denied Sickels and Cole's allegations. CR.13, 16.

Radiologists Michael Sickels and James Christopher Cole sued Shannon Medical Center, alleging that Shannon Medical Center failed to meet its duty to properly monitor, report, and restrict their exposure to radiation. CR.7-10. They claimed that, as a result, they received unsafe levels of radiation while they worked. CR.7-10. Sickels and Cole developed cancer in their upper extremities and underwent numerous surgical procedures and amputations. CR.6-10. They urged that Shannon Medical Center's alleged failure to properly monitor, report, and restrict exposure to radiation proximately caused these injuries. CR.4-12.

To be clear, Sickels and Cole disagree that their claims are health care liability claims as defined by Section 74.001(a)(13). CR.45-77. But their claims turn on the idea that Shannon Medical Center, a healthcare provider, departed from "accepted standards … of safety or professional or administrative services directly related to health care," by allegedly failing to properly monitor, report, and restrict their exposure to radiation while they worked, which are health care liability claims. CR.6-8. That triggered their obligation to serve an expert report and curriculum vitae under Chapter 74 of the Texas Civil Practice & Remedies Code.

Sickels and Cole never served Shannon Medical Center with the statutorily required expert report. Thus, after the expiration of the 120-day period, Shannon Medical Center moved to dismiss their claims under Section 74.351 of the Texas Civil Practice & Remedies Code. CR.25-43.

The radiologists responded, asserting that their claims were not health care liability claims. Firstly because, according to them, their allegations arose from under the Texas Radiation Control Act and the Texas Administrative Code's Radiation Control chapter, not the Texas Medical Liability Act. CR.45-77. But such allegations—even under those

standards—allege departures from safety directly related to the health care. RR.17. Second, despite their employment contracts with Shannon Clinic, they also alleged that Shannon Medical Center employed them, and that the Act did not apply to their claims as a result. CR.46-51. But Shannon Medical Center never exercised control over them in an employment relationship, rather, Shannon Clinic employed them to work as radiologists at Shannon Medical Center. CR.119-123;308-311. Third, they claimed to have served an expert report under the statute by providing medical records regarding the radiologists' conditions. CR.72-76. But no record sets forth the required elements of an expert report. RR.19-21.

At the hearing on the dismissal motion, the parties emphasized these positions. RR.5-59. The trial court took the matter under advisement. RR.58-59. Shortly thereafter, the trial court denied Shannon Medical Center's dismissal motion. CR.314. This appeal followed. CR.316-317.

## Summary of the Argument

While there are different issues in this case, the main question—around which they all center—is whether Sickels and Cole's claims are

19

health care liability claims and subject to the requirements of Chapter 74 of the Texas Civil Practice & Remedies Code. Appellate courts review this question de novo, affording no discretion to the trial court. Here, the importance of this question is significant because, if the claims are health care liability claims, Sickels and Cole failed to comply with Chapter 74's expert-report requirement. And the trial court reversibly erred by not dismissing their claims with prejudice and awarding statutory remedies.

A health care liability claim has three elements: (1) a physician or health care provider must be a defendant; (2) the claim must concern treatment, lack of treatment, or a departure from accepted standards of medical or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the alleged injury. Courts focus on the essence and underlying nature of the claim in answering this question, not the artful manner in which a claimant may try to plead the case to avoid the statutory requirement. If a claim is a health care liability claim, a claimant must serve a preliminary expert report within 120 days of the defendant filing their answer. When a claimant fails to serve an expert report by the deadline, the statute

mandates the claim's dismissal and entry of an award of attorney's fees and court costs incurred by the defendant.

This case satisfies the three elements for it to be a health care liability claim—regardless of the specific manner in which Sickels and Cole framed it. First, Sickels and Cole are claimants who sued Shannon Medical Center, a hospital. Second, Sickels and Cole allege that Shannon Medical Center departed from safety standards that have a substantial nexus to health care. Evaluating the seven *Ross* factors that help courts determine if a sufficient relationship to health care exists proves that this case is a health care liability claim. Six of the seven *Ross* factors weigh in favor of that conclusion, especially when viewed from the perspective that patients will be in harm's way if Sickels and Cole's allegations are true. As for the third element, Sickels and Cole alleged Shannon Medical Center's safety failures proximately caused their injuries. In short, this case meets the elements of a health care liability claim.

And Sickels and Cole need expert testimony to prove their claims. The subject matter of their claims—alleged overexposure to radiation while treating patients—is highly specialized area of knowledge that falls outside an ordinary layperson's understanding. Where expert testimony

is needed to prove or refute a claim, that is a substantial consideration—frequently decisive—in determining whether it is a health care liability claim.

Sickels and Cole's claims are not exempt from the definition of a health care liability claim because Shannon Medical Center did not employ them they are, at best, independent contractors who have staff privileges at the hospital. In fact, Sickels and Cole have employment contracts with another party, Shannon Clinic, which employed them as full-time employees. No evidence established that Shannon Medical Center controlled the details by which Sickels and Cole performed their work as radiologists. Nothing negates their employment agreements with Shannon Clinic or usurps the control of Shannon Clinic as their employer.

Because their claims were health care liability claims, Sickels and Cole had to serve an expert report and curriculum vitae within 120 days of Shannon Medical Center's answer. They failed to do that. While they submitted over 3,700 pages of medical records containing physician notes on their alleged condition related to radiation overexposure, those records provide no opinions on the applicable standard of care, Shannon

Medical Center's purported breach of any standard of care, or any explanation of how that breach proximately caused Sickels's and Cole's alleged injuries. Because they served no expert report and curriculum vitae and because the medical records did not satisfy Chapter 74's expert-report requirement, Sickels and Cole failed to comply with the statute, mandating dismissal and an award of statutory remedies.

In sum, Sickels and Cole alleged health care liability claims, requiring  service of an expert report and curriculum vitae within statutory deadline. They did not. That failure mandated the trial court's dismissal of their claims with prejudice and an award of statutory remedies. The trial court reversibly ruled by denying Shannon Medical Center's dismissal motion. This Court should reverse, render judgment dismissing the case with prejudice, and remand the case to the trial court for entry of an award of the statutory remedies.

## Argument

### A. Standard of Review

Generally, appellate courts review denial of Section 74.351 dismissal motions for an abuse of discretion. *Am. Transitional Care Ctrs.*

*of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). But whether a claim is a health care liability claim is a legal question that appellate courts review de novo. *Collin Creek Assisted Living Ctr., Inc. v. Faber*, 671 S.W.3d 879, 885 (Tex. 2023); *Baylor Scott & White Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019). Even under an abuse-of-discretion standard, trial courts have "no discretion in determining what the law is or applying the law to the facts." *In re Allstate Indem. Co.*, 622 S.W.3d 870, 875-876 (Tex. 2021). Thus, in applying the definition of a health care liability claim to the allegations to determine if a claim is a health care liability claim would be an issue over which the trial court has no discretion. Under either scenario, the standard of review affords no discretion to the trial court.

## B. This Case Is a Health Care Liability Claim Subject to the Requirements of Chapter 74 (Issue 1)

Chapter 74 of the Texas Civil Practice & Remedies Code defines a "health care liability claim" as:

> A cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's cause of action sounds in tort or contract.

24

Tex. Civ. Prac. & Rem. Code § 74.001(a)(13). Chapter 74 also defines "health care" as "any act or treatment performed or furnished or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Tex. Civ. Prac. & Rem. Code § 74.001(a)(10). And Chapter 74 defines medical care as "any act defined as practicing medicine under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient during the patient's care, treatment, or confinement." Tex. Civ. Prac. & Rem. Code. § 74.001(a)(19). The Texas Occupations Code defines "practicing medicine" as "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions…." Tex. Occ. Code § 151.002(a)(13).

Based on these definitions, a health care liability claim has three elements: (1) the defendant is a physician or health care provider; (2) the claim concerns treatment, lack of treatment, or a departure from accepted standards of medical or health care, or safety or professional or

25

administrative services directly related to health care; and (3) the defendant's complained-of conduct proximately caused the alleged injury. *Rogers v. Bagley*, 623 S.W.3d 343, 349 (Tex. 2021). The definition of "health care provider" includes "a health care institution," among the examples of its definition of "any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care." Tex. Civ. Prac. & Rem. Code § 74.001(a)(12)(A). A hospital, like Shannon Medical Center, is an example within Chapter 74's list of "health care institution[s]." Tex. Civ. Prac. & Rem. Code § 74.001(a)(11).

Chapter 74's broad statutory definition "creates a rebuttable presumption that a claim is a [health care liability claim] if it is against a physician…and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012). Or perhaps that presumption is just an observation that "a patient's interactions with her doctor 'during the course' of her care will consist primarily of medical care." *Leibman v. Waldroup*, 669 S.W.3d 20, 2025 Tex. Lexis 468, *19 (Tex. 2025). This "presumption" applies where the conduct arises from

26

"the patient's medical care—that is, of her diagnosis or treatment." *Id.* at *20.

The nature—or essence—of the claim determines whether it is a health care liability claim. *Omaha Health Care Center, LLC v. Johnson*, 344 S.w.3D 392, 394 (Tex. 2011); *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005). If the essence of the claim is an alleged "departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care," it is a health care liability claim. *Weems*, 575 S.W.3d at 364.

That is true regardless of whether a party's petition expressly cites the Texas Medical Liability Act or alleges a breach of any accepted standards of medical care, health care, safety or professional or administrative services directly related to health care. *See Loaisiga.*, 379 S.W.3d at 255. If the act or omission complained of is inseparable from the rendition of medical or health care, it is a health care liability claim. *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 544 (Tex. 2004). And if expert testimony "is necessary to prove or refute the merits of the claim against a physician or health care provider, it is a health care liability

claim." *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 182 (Tex. 2012).

A party cannot use artful pleading to change the nature of their claim to avoid the effects of Chapter 74. *See Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 837 (Tex. 2022). Instead, courts "must determine the claim's true underlying nature by considering the entire court record, including the pleadings, motions, and responses, and relevant evidence properly admitted," leaving courts "not bound by the pleadings." *Id.* at 837-838 (cleaned up). Thus, "claims premised on facts that *could* support claims that qualify as health care liability claims *are* health care liability claims, regardless of the pleading's specific allegations." *Id.* at 838 (emphasis in original, cleaned up). Courts examine the operative facts to see what is relevant to the alleged injury. *Collin Creek Assisted Living*, 671 S.W.3d at 885.

If a claim is a health care liability claim, a claimant must serve a preliminary expert report within 120 days of the defendant answering the lawsuit. Tex. Civ. Prac. & Rem. Code § 74.351(a). That report must set out, in non-conclusory fashion, the standard of care, breach of the standard of care, and proximate cause. Tex. Civ. Prac. & Rem. Code §

28

74.351(r)(6); *Baty v. Futrell*, 543 S.W.3d 689, 693-694 (Tex. 2018); *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). Failure to serve an expert report requires dismissal of the case with prejudice and entry of an award of attorneys' fees and court costs. Tex. Civ. Prac. & Rem. Code § 74.351(b); *Badiga v. Lopez*, 274 S.W.3d 681, 685 (Tex. 2009).

1. **Sickels and Cole's allegations satisfy the elements of a health care liability claim.**

Sickels and Cole's allegations satisfy the elements of a health care liability claim. They are claimants who sued a hospital; they alleged departures from safety standards; and they allege their injuries came from those departures from safety standards. By definition, their claims are health care liability claims.

a. **Sickels and Cole are claimants who sued a hospital**

Sickels and Cole are claimants under Chapter 74, which defines a claimant as "a person…seeking…recovery of damages in a health care liability claim." Tex. Civ. Prac. & Rem. Code § 74.001(a)(2). That definition has no requirement that the claimant be a patient or someone seeking treatment—as case law has proven time and again:

- Claims by bridal boutique related to hospital's handling of its staff's exposure to infectious disease were health care liability

29

claims despite the store and exposed nurse not being the hospital's patient (*Coming Attractions Bridal & Formal, Inc. v. Texas Health Res.*, 595 S.W.3d 659, 661-662 (Tex. 2020));

- Claims by person indicted for aggravated assault arising from allegedly inaccurate medical records were health care liability claims despite not being brought by, or through, the patient (*Baylor Scott & White Hillcrest Med. Ctr.*, 575 S.W.3d at 361-362, 364-366));

- Claims that hospital defrauded family members about the cause of death of a loved one were health care liability claims despite the patient not being the person defrauded (*Christus Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 537 (Tex. 2016)); and

- Claims by employee of psychiatric facility against the facility were health care liability claims even though the employee was not a patient at the facility (*Tex. W. Oaks Hosp.*, 371 S.W.3d at 193 (Tex. 2012)).

As the Supreme Court explained, Chapter 74 "does not limit its reach to person receiving or having received health or medical care—it applies to claimants." *Carswell*, 505 S.W.3d at 537. Even claims of professional or administrative services need only "directly relate[] to the health care of *some* patient." *Id.* (emphasis in original).

Here, Sickels and Cole seek damages in a health care liability claim, making them claimants. They assert that their exposure to radiation came as part of their radiology work at the hospital. CR.6. That work was treating patients. CR.6. They are claimants.

30

Shannon Medical Center is a hospital, which is health care provider. Tex. Civ. Prac. & Rem. Code §§ 74.001(a)(11) and (12)(A). Sickels and Cole sued Shannon Medical Center, which they admit is a "healthcare company." CR.5. Texas Department of State Health Services recognizes that Shannon Medical Center is a licensed hospital. A search of licensed providers reveals that the State licensed "Shannon Medical Center" as a "hospital," holding license 000168 and has been licensed since at least 1960. Search Department of State Health Services (entering "Shannon Medical Center" under "organization" and conducting the search). Similarly, the Texas Department of Health and Human Services publishes a spreadsheet of general and specialty hospitals, which includes Shannon Medical Center as a general hospital with license number 000168. TX HHS List of General and Special Hospitals.

Perhaps more importantly, Sickels and Cole's exhaustive briefing and argument below never disputed that Shannon Medical Center was a health care provider. CR.45-306, RR.23-59. That should not be surprising because they are interventional radiologists who admit that they are performing medical procedures at Shannon Medical Center, where they

31

claim to have been exposed to radiation. CR.6. Even case law identifies Shannon Medical Center as a hospital—while applying the contours of Chapter 74. *See, e.g.*, *Wigley v. Shannon Med. Ctr.*, No. 03-17-00086-CV, 2017 WL 5985501, 2017 Tex. App. Lexis 11177, *1 and *5-13 (Tex. App.—Austin 2017, no pet.) (describing Shannon Medical Center as a hospital and analyzing whether an expert was qualified under Sections 74.401 and 402 of the Texas Civil Practice & Remedies Code); *Constancio v. Shannon Med. Ctr.*, No. 03-10-00134-CV, 2012 WL 1948345, 2012 Tex. App. Lexis 4339, *2-*5 (Tex. App.—Austin 2012, no pet.) (describing Shannon Medical Center as a hospital and the claims as health care liability claims under the Texas Medical Liability Act).

In short, Sickels and Cole are claimants, and Shannon Medical Center is a health care provider. Thus, the first element of a health care liability claim is satisfied.

**b. Sickels and Cole alleged departures from safety standards that have a substantive nexus to the provision of health care**

Sickels and Cole alleged that Shannon Medical Center failed to comply with accepted standards of safety. Specifically, they alleged that it failed

- to properly limit radiation exposure,

- to warn Sickels and Cole of the levels of radiation they were being exposed to,

- to provide adequate protocols and procedures to limit that exposure,

- to provide adequate protective equipment and clothing, and

- to otherwise provide a safe environment with regard to radiation exposure in accordance with the Texas Safety and Administrative Codes.

CR.4-10. In other words, the complained-of conduct asserts a departure from "accepted standards of medical or health care, or safety or professional or administrative services directly related to health care." Tex. Civ. Prac. & Rem. Code § 74.001(a)(13). Thus, the essence and

33

underlying nature of Sickels and Cole's claims fall squarely within the second element of a health care liability claim.

The phrase "directly related to health care" does not modify its reference to safety standards. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015). But a safety-standard breach still must share a "substantive nexus" with the provision of health care—i.e., more than a but-for standard. *Id.* "The pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id.* At 505. Thus, allegations that a hospital failed to control "the spread of a virus to its nursing staff and the public…implicate[d] safety standards directly related to health care— the care and treatment of an infected patient." *Coming Attractions*, 595 S.W.3d at 664.

To help courts determine whether this substantive nexus exists, the Supreme Court provided seven non-exclusive considerations (known as the *Ross* factors) to employ in analyzing these issues:

"(1) Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

(2) Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

(3) At the time of the injury was the claimant in the process of seeking or receiving health care;

(4) At the time of the injury was the claimant providing or assisting in providing health care;

(5) Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

(6) If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

(7) [d]id the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?"

*Ross*, 462 S.W.3d at 505. These factors apply to all safety standards because they show "a sufficient relationship to constitute health care liability claims." *Collin Creek Assisted Living Ctr.*, 671 S.W.3d at 888. Evaluating these factors proves that they weigh heavily in favor of this case being a health care liability claim.

35

The first factor is whether the alleged negligence occurred during the defendant's performance of tasks meant to protect patients from harm. Here, it did. As a hospital, Shannon Medical Center has a duty to protect patients from dangerous levels of radiation exposure—just as it would doctors as alleged by Sickels and Cole. This is especially true while performing radiology studies on patients or while a physician does a radiology-assisted procedure (in the field of interventional radiology). The hospital setting here is not merely incidental to the patient's exposure to radiation—the patient is at the hospital for the radiology study or procedure. And the doctor's exposure to the radiation is due to his presence in the radiology suite—where the patient is. Thus, this case is not a slip-and-fall incident that could occur in locations where patients are not and locations unrelated to patient care. *Ross*, 462 S.W.3d at 499.

Sickels and Cole argue that this factor does not apply to their claims because the administrative regulations do not apply to patients for medical diagnosis or therapy. CR.65-66. That attempt to cabin the statute's application to exclude affected patients ignore that Sickels and Cole's allegations implicate patient safety because they too are potentially overexposed to radiation—if one were to believe the

36

allegations. And while the regulations do not limit the dose for potential diagnosis or therapy, compliance with the regulations also protects patients from doses of radiation that they should not receive—just like the physician or health care provider. Likewise, while the dosimeters and individual monitoring desired by Sickels and Cole would potentially analyze long-term buildup of radiation exposure (CR.66), it would also detect critical breaches in the short-term—a breach that could severely compromise patient health from a one-time exposure.

Sickels and Cole argue that radiation devices can be in other fields—oil and gas or university research—those other fields do not have patients present and also exposed to the radiation. In short, Sickels and Cole's attempt to limit the reach of the statutory and regulatory framework overlooks how patients are protected by those regulations in this particular setting. And that setting cannot be divorced from the context in which Sickels and Cole were allegedly exposed to radiation—that is the exact same context in which patients could suffer harm. The first factor favors the case being a health care liability claim.

The second factor is whether the injuries occurred in a place where patients might be while they received care, implicating the provider's

obligation to protect patients during medical care or treatment. While Sickels and Cole discount this factor, even they admit that "a good deal of the exposure to ionizing radiation [they] experienced did occur in areas where patients were present." CR.66. Sickels and Cole downplay this factor, saying it is incidental because the statutory and regulatory framework does not protect patients. CR.66-67. As with the first fact, their argument ignores the salutary effect that these safety standards have in protecting patients from overexposure to radiation.

Sickels and Cole admit they do not know *how* the overexposure occurred—was it a radiation leak from the machine or was it some other mechanism? (CR.25-26)—and their lack of knowledge underscores why their allegations implicate patient safety. The patients are exposed to whatever radiation the radiologists received—which neither of them should have received. That Sickels and Cole treated patients when allegedly exposed emphasizes how patients were allegedly in danger. This factor weighs in favor of the case being a health care liability claim.

The third factor is whether the claimant sought or received health care at the time of the events. Evidence of that factor does not exist here because Sickels and Cole *provided* that treatment when they were

38

exposed to the radiation. This factor favors the claim not being a health care liability claim.

While the third factor asked whether the claimant sought or received treatment, the fourth factor asks the corollary question of whether the claimant provided or assisted in providing health care at the time of the injury. Sickels and Cole admit that this factor "is likely satisfied." CR.67. Indeed, that is their very allegation—the received the exposure to radiation while performing their duties as radiologists. CR.6.

Sickels and Cole insist this factor is not relevant or dispositive because the health care location did not create the obligation. But, as discussed, that ignores the fact that the patient *is exposed* (or *overexposed*) to this very same radiation when receiving the treatment, and the obligations asserted by Sickels and Cole also protect the patient from that radiation. While these duties may exist outside of the health care context, in those other contexts, patients or other people are not exposed to the radiation—other than the workers in those environments. In health care, however, the patient is exposed along with the worker, so that the alleged obligation to protect the worker also protects the patient.

One final point about the third and fourth factors: that one factor asks about the patient and the other asks about the doctor or health care provider demonstrates how Chapter 74 does not require the claimant to be a patient. Instead, the issue is whether the event occurred at a location where health care or medical care was occurring. Here, that answer is resoundingly yes—as admitted by Sickels and Cole.

The fifth factor is whether the alleged negligence is based on safety standards arising from professional duties owed by the health care provider. Using the same analysis for the other factors, Sickels and Cole argue that this factor is not about health care standards and does not apply to patient care. CR.67-68. But that assertion ignores that hospitals, physicians, and health care providers that use radiation devices have these obligations, making them part of their professional duties toward patients. After all, protecting the radiologist from overexposure to radiation also protects the patient from overexposure. Sickels and Cole allege that Shannon Medical Center failed to comply with safety rules and regulations by not maintaining a proper procedure to monitor, control, and report levels of radiation. CR.7-8. That allegation asserts a

breach of safety standards purportedly owed by the hospital. And this factor weighs in favor of the case being a health care liability claim.

In discussing this factor, Sickels and Cole rely on a radiation-exposure case from one of the intermediate appellate courts in Houston. CR.68-70. But that case is inapposite—primarily because the events occurred at a location where patients were not present. There, McNew—a clerical employee whose job exclusively involved collecting statistical data—sued a hospital, asserting that her office therein "was located adjacent to a 'radiation-emitting device,'" which exposed her to radiation and caused her breast cancer. *Harris Cnty. Hosp. Dist. v. McNew*, No. 14-18-00868-CV, at *1 (Tex. App.—Houston [14th Dist.] Feb. 27, 2020, no pet.).

The appellate court concluded the claims did not fall within the definition of a health care liability claim for two main reasons: (1) the appellee did not assert claims based on facts implicating the hospital's conduct during any care, treatment, or confinement of the appellee, and (2) her alleged injuries did not occur in a place where patients might be while receiving care, rather, she was in an administrative office for the sole purpose of recording statistical data—i.e., not seeking or receiving

41

health care—and she was not providing or assisting in providing health care at the time of her alleged injuries. *Id.* In other words, the facts that gave rise to her claim did not trigger the rebuttable presumption that the claim is a health care liability claim, and the court's analysis of the *Ross* factors weighed against finding a health care liability claim. *Id.* at *5. Of course, in stark contrast, the presumption applies here because the allegations occurred during treatment and in locations where patients were and where treatment occurred.

In *McNew*, the appellate court also concluded that "three of these factors [numbers 2, 3, and 4] clearly weigh against" the conclusion that the appellee's claim is a health care liability claim because patients would not be present and no treatment occurred. *Id.* *7-*8. As for the other factors, the court could not answer them due to a lack of information. *Id.* at *10 ("Without more than a tentative identification regarding the type of machine that allegedly caused McNew's injuries, we cannot determine [the remaining factors.]"). Because three factors weighed against the case being a health care liability claim and four went unanswered, the court noted that "[a] claim alleging excessive radiation exposure is not per se based on safety standards arising from professional duties owed by a

health care provider." *Id.* CR. 68-9. In contrast, patients were present and care was provided in the setting where Sickels and Cole purportedly received excess doses of radiation. And, in that context of patients' presence and patient care occurred, we can answer the other factors—as explained here. Thus, *McNew* is inapplicable to this case.

The sixth factor asks whether the instrumentality involved in the defendant's alleged negligence was of a type used in providing health care. Unlike *McNew*, we know here that the radiation devices are the type used in providing health care because Sickels and Cole allege their injuries are a result of being exposed to radiation from the machines they used in performance of their duties as radiologists. CR.6-8. Thus, the instrumentality involved *is* one that is used in providing health care—it is medical equipment that they used in carrying out their duties as radiologists. This factor weighs in favor of the case being a health care liability claim.

Sickels and Cole complain that the instrumentality is not the radiation devices they used in performing their jobs but the lack of dosimeters to monitor radiation levels. CR.70-71. But that argument neglects the fact that they complain about exposure to and control of

43

radiation, not just monitoring of radiation exposure. CR.6. And regardless of monitoring devices, the injury-causing device was the radiation-emitting machine, not the monitoring device. And even without knowing what device was used or how, Sickels and Cole admit that the devices were used in their jobs providing care as radiologists. Their arguments do not change the analysis of this factor and how it weighs in favor of the case being a health care liability claim.

The seventh factor—whether the alleged negligence occurred during the defendant's conduct to comply with safety-related requirements for health care providers by governmental or accrediting agencies. As discussed, while the statutory and regulatory framework cited by Sickels and Cole apply in some other contexts, that framework—in the health care setting—exists to protect the worker and the exposed patient. Indeed, the alleged negligence here is Shannon Medical Center's supposed failure to "maintain proper procedures to monitor, control, and report the levels of radiation exposure to [the radiologists]" in violation of State law. CR.7-8. That necessarily occurred while Shannon Medical Center allegedly "fail[ed] to take actions necessary to comply with safety requirements that a governmental or accrediting agency set for health

care providers," affecting patient exposure to radiation. CR. 7-8. In this context, this factor weighs in favor of the case being a health care liability claim.

The *Ross* factors are a qualitative assessment, so no particular number in favor is dispositive in determining whether a case is a health care liability claim. *See f. Ross*, 462 S.W.3d at 505 ("[C]ertain non-exclusive considerations lend themselves to analyzing whether such a claim is substantively related to the defendant's providing of medical or health care and is therefore a [health care liability claim]."). Instead, those factors help establish whether the necessary nexus to health care exists. Here, six of the seven *Ross* factors weigh in favor of the case being a health care liability claim with just one factor favoring Sickels and Cole's favor, albeit with its opposite factor favoring Shannon Medical Center. The site of the injury is where patients are, where patients could be harmed by the very allegations lodged by Sickels and Cole, and where medical care and treatment occurred. That shows this case has a substantial nexus to health care.

Six of the seven *Ross* factors favor this case being a health care liability claim, but many courts have reached that conclusion based on

45

fewer factors. *See Fernil v. Bluebird Med. Enters., LLC*, 714 S.W.3d 171, 185-188 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) (concluding the claim was a health care liability claim based on only four of the seven *Ross* factors); *City of Alvin v. Fields*, No. 01-22-00572-CV, 2023 LX 54875, at \*19 (Tex. App.—Houston [1st Dist.] June 15, 2023, no pet.) (same); *see also McNew*, 2020 Tex. App. Lexis 1681 at \*7-\*11 (deciding the issue based on three answers the negative with the rest as undetermined).

As a final note on the alleged safety-based claims, the requirement of expert testimony is a substantial factor weighing in favor of a claim being a health care liability claim. *Lake Jackson Med. Spa, Ltd.*, 640 S.W.3d at 844. One should, at least, consider that requirement in tandem with the *Ross* factors. The Supreme Court has repeatedly suggested that the need for such expert testimony can be dispositive in making a claim a health care liability claim,

- *Tex. W. Oaks Hosp.*, 371 S.W.3d at 182 ("[W]e now hold that if expert medical or health care testimony is necessary to prove or refute the merits of the claim against a physician or health care provider, the claim is a health care liability claim.");

46

- *Rogers*, 623 S.W.3d at 351 (holding claims were health care liability claims because "their proof requires expert testimony"—without analyzing the *Ross* factors);

- *Coming Attractions*, 595 S.W.3d at 667 (holding—without analyzing the *Ross* factors—that the claims alleging violations of both health care and safety standards were health care liability claims "[b]ecause medical experts must discuss the hospital's departure from safety standards"); and

- *Weems*, 575 S.W.3d at 365-66 (holding that the need for expert testimony "is *sufficient* to establish that the claim is a health care liability claim.") (emphasis added).

Here, expert testimony is necessary to prove or disprove Sickels and Cole's allegations. Ordinary laypersons do not know—and "cannot be expected to understand" by themselves—what proper levels of radiation are, how to determine what is a proper level, how to prevent overexposure to radiation or radiation at improper levels, how to monitor for radiation exposure, what procedures should be in place to protect against radiation overexposure, and all the similar issues raised by Sickels and Cole's allegations. *See Lake Jackson Med. Spa, Ltd.*, 640 S.W.3d at 844. That

laypersons do not have this knowledge, requiring expert testimony, is another significant factor to consider in determining that the case is a health care liability claim.

Based on Sickels and Cole's specific allegations, the weighing of the *Ross* factors, and the need for expert testimony, their claims are health care liability claims—alleging departure of safety standards with a substantial nexus to health care. The trial court reversibly erred by concluding otherwise.

### c. Sickels and Cole allege that departures from safety standards proximately caused their injuries

Turning to the third element of a health care liability claim, proximate cause, Sickels and Cole allege that Shannon Medical Center's supposed safety failures proximately caused their injuries. CR.4-10. No more is necessary—after all, if Sickels and Cole deny the safety failures were a proximate cause, then they could have no recovery from Shannon Medical Center anyway. To that end, they never contended that the proximate cause element was not satisfied here. CR.45-76.

### 2. Sickels and Cole's artful pleading cannot circumvent the requirements of Chapter 74

Claimants cannot disguise a health care liability claim "as another cause of action to avoid [Chapter 74's] requirements." *Diversicare*, 185 S.W.3d at 851.The nature of the claim determines whether a claim is a health care liability claim, not the specific allegations or claims asserted. *Yamada*, 335 S.W.3d at 196. If the act or omission complained of is inseparable from the rendition of medical or health care, it is a health care liability claim. *Garland Cmty. Hosp.*, 156 S.W.3d at 544.

While Sickels and Cole disagree that their claims are health care liability claims, the nature of their claims prove otherwise. They assert that Shannon Medical Center's failures involve breaches of "occupational health and safety responsibilities no different than any other industry that used equipment that involves radiation." CR.51. But they ignore the context in which this use of radiation equipment occurs. Unlike all other potential industry uses of radiation equipment, when a hospital fails to comply with health and safety standards, that necessarily implicates patient-safety standards. The use of radiation in a hospital is in the provision of medical or health care, i.e., taking diagnostic radiology images for a doctor to diagnose the patient's condition or using the radiology images in real-time to guide the care provided to the patient—

such as when an interventional radiologist uses the x-ray to guide placement of a catheter or other medical device treating the patient. That is the provision of medical or health care, making any breach of safety standard—regardless of the claimed source of the obligation—directly related to the provision of health care.

Indeed, the doctor or hospital employee using the equipment is not the only person exposed to excess radiation—the patient is also exposed to it. Even "occupational safety standards" have the effect of minimizing the radiation dose that patients receive, ensuring that they receive the proper amount for the treatment and no more. Any failure of a radiation safety standard—in a hospital like Shannon Medical Center—exposes the patient to excess radiation, putting the patient in harm's way.

The statute and regulation that Sickels and Cole rely upon—Chapter 401 of the Texas Health and Safety Code and Chapter 289, Title 25 of the Texas Administrative Code—are designed to ensure hospitals implement radiation safety measures that protect patients and medical providers alike. CR.51-53. The purpose of Chapter 401 of the Texas Health and Safety Code is "to ensure effective regulation of sources of radiation for protection of the occupational and public health and safety

50

and the environment" and "permit maximum use of sources of radiation consistent with public health and safety and environmental protection." Tex. Health & Safety Code § 401.002(1),(4). And the purpose of Title 25 of the Texas Administrative Code is to establish requirements "for the use of radiation machines in the healing arts" and "standards for protection against ionizing radiation resulting from the use of radiation machines" in relation to public health and safety. *See* 25 TAC § 289.227, 289.231.

This application of Chapter 74 is no different than that in *Coming Attractions*. There, a nurse, while working at a hospital with allegedly insufficient protective equipment, treated a patient with an Ebola infection. *Coming Attractions*, 595 S.W.3d at 661. The nurse became infected and, before she knew about her infection, visited an out-of-state bridal shop. *Id*. That nurse's presence at the bridal shop while infected with Ebola caused the bridal shop to go out of business. *Id*. The Supreme Court concluded that the bridal shop's claim against the hospital was a safety claim with the required substantive nexus to health care because "[a] hospital's alleged negligence in controlling the spread of a virus to its nursing staff and the public…implicates safety standards directly related

51

to health care—the care and treatment of an infected patient. *Id*. at 664. The bridal shop alleged infection spread based on the hospital's training treatment, and infection control policies and exposed the nurse to the virus…and failed to prevent or warn them" about the exposure. *Id. See also id*. at 665 (itemizing the specific allegations about the lack of policies and procedures, training of the medical staff, having sufficient equipment, and exposing the nursing staff to the virus).

The same analysis applies here. The excess radiation that Sickels and Cole claim caused their injury exposes patients to excess radiation. And if the radiation leaked from the hospital, no telling who else in the public could be injured by the alleged improper handling of the radiation. Sickels and Cole alleged that the hospital was negligent by:

- Failing to monitor levels of radiation exposure (allegation a);
- Failing to warn of the levels of radiation exposure (allegation b);
- Failing to report the levels of radiation exposure (allegation c);
- Failing to restrict the levels of radiation exposure (allegation d);
- Failing to provide proper radiation monitoring devices (allegation e);

- Failing to provide appropriate protective radiation protective devices (allegation f); and

- Failing to maintain procedures to monitor, control, and report the levels of radiation exposure (allegations g and h).

CR.7-8. The same reasons that the hospital allegedly failed to protect Sickels and Cole from the exposure to excess radiation is the same reason that patients were alleged exposed to that radiation. These safety-based claims have the required substantial nexus to health care, making them health care liability claims.

### 3. Sickels and Cole were not employees of Shannon Medical Center (Issue 2)

Sickels and Cole claim that Chapter 74 does not apply to them because they are employees of the hospital—Shannon Medical Center. But they have employment contracts with Shannon Clinic, and the evidence did not establish that Shannon Medical Center controlled the details by which Sickels and Cole performed their work as radiologists. Because Sickels and Cole are not employed by Shannon Medical Center, their claims are not excluded from the definition of a health care liability claim.

Physicians are generally considered to be independent contractors when working in hospitals at which they have staff privileges.

*Renaissance Med. Found. v. Lugo*, 719 S.W.3d 505, 510 (Tex. 2025). And a physician's mere agreement to abide by a hospital's policies and procedures while using its facilities does not elevate his status to that of an employee. *Drennan v. Community Health Inv. Corp.*, 905 S.W.2d 811, 819 (Tex. App.—Amarillo 1995). As such, Texas has consistently held that hospitals do not control the details over a physician's work—even if they have hospital privileges, so hospitals are not vicariously liable for a physician's conduct. *See id.*

Here, the employment contracts between Sickels and Cole, on the one hand, and Shannon Clinic, on the other, prove that the Clinic employed these doctors. Supp.CR.[1] The contracts provide:

> The Clinic hereby employs the Physician, and the Physician hereby accepts employment with the Clinic, upon the terms and conditions set forth herein. The Physician is a full-time employee of the Clinic[] and agrees to devote his/her full professional time and attention to the performance of his/her duties hereunder for and on behalf of the Clinic.

---

[1] The Clerk's Record appears to have omitted the attachments to Defendant's Reply on the dismissal motion, which included redacted copies of Sickels's and Cole's employment agreements with Shannon Clinic. Appellant will request a supplemental record to include those omitted exhibits. Sickels and Cole's Response to the dismissal motion included an unsigned version of the employment agreement that is virtually the same as the signed agreements. CR.119-123.

Supp.CR. *See also* CR.119. Under the agreements, they had clinical duties, including:

- Interviewing, examining, and providing medical services and treatment to patients of the Clinic, including, without limitation, patients referred from other physicians and patients from any managed care plan in which the Clinic is a participating provider;

- Keeping and maintaining, or causing to be kept and maintained, appropriate records, reports, claims, and correspondence necessary and appropriate in connection with all professional services rendered by the Physician under this Agreement, including, but not limited to, information on the medical services provided in accordance with the Clinic's policies and protocols regarding medical records, claims preparation, and utilization management;

- Participating in the Clinic's patient care management or patient safety programs;

- Promoting, to the extent permitted by law and the applicable canons of medical ethics, the professional practice of the Clinic and assisting in developing a fully integrated health care delivery system as an affiliate of Shannon Medical Center; and

- Attending professional conventions, postgraduate seminars, and functions of professional societies necessary to maintain and improve the Physician's professional skills, and abide by the Clinic's CME policies and the requirements of the Physician's medical board specialty.

Supp.CR. *See also* CR.119-120. For these services, the Clinic paid his various forms of compensation—base salary, pooled compensation, and

incentive bonuses as well as disability draw should they become disabled. Supp.CR. *See also* 120-123.

"Right of control may be shown by explicit contractual assignment or actual exercise of control." *Lugo*, 719 S.W.3d at 510 (cleaned up). The contracts with Shannon Clinic demonstrate that explicit contractual control and employment arrangement. Despite those agreements and the lack of any contract with Shannon Medical Center, Sickels and Cole contend that they are employees of Shannon Medical Center. True, absent a written contract, actual exercise of control over the physician's work can establish an implied employment relationship. *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 911 (Tex. App.—Ft. Worth 2008). In this context, control must extend beyond a general right to start or stop work, inspect progress, receive reports, or require safety measures to establish an employer-employee relationship. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985); Restatement (Second) of Torts § 414 (1965).

The following five factors are considered when determining contractual right of control:

> (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and

materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job.

*Limestone Products Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002). An analysis of these factors supports the conclusion that Shannon Medical Center did not employ Sickels and Cole, making their claims health care liability claims.

The first employment factor measures the independent nature of the workers' business. Here, radiology is an independent medical practice, particularly at hospitals. While hospitals have radiology departments and even support personnel, they do not employ physicians interpreting the diagnostic radiology studies or performing radiology procedures. The nature is an independent business—separate from the care that the hospital provides.

The second employment factor considers whether the worker had an obligation to furnish the necessary tools. In radiology, the hospital provides equipment in a literal sense (the radiology machines which are often immovable fixtures). But the real tool is the radiologists' knowledge, expertise, skill, and ability to interpret the diagnostic

57

radiology studies and perform the radiology procedures. Indeed, without the radiologists' minds deciphering the information and the radiologists' skill performing the procedures, the department is essentially meaningless. The necessary "tools" of the trade are within the radiologist, not the hospital's equipment.

The third factor addresses the workers' right to control the progress of their work. Here, the radiologists' third-party employer set the schedule to allocate work equitably. CR.119 ("[Shannon] Clinic will assist the Physician in building a practice by scheduling and assigning new patients to the Physician."). Sickels and Cole claim that the work schedule was determined within the radiology department in Shannon Medical Center, they carefully do not dispute their employment contracts' description of that role being played by Shannon Clinic, which could do the scheduling within the department. *Compare* CR.119 *with* CR.128, 130.

Even scheduling by Shannon Medical Center would only establish a workflow—like which surgeon is in the operating room at what time—and would not control the manner and means by which the surgeon conducts an operation. The same is true for radiologists—scheduling does

not control the details over how a radiologist interprets a radiology study or performs a radiology procedure. And Sickels and Cole remained free to take breaks, when necessary, determine if the order or work should change, and the like. They judged what progress to make while interpreting studies or performing procedures.

While Sickels and Cole claim that Shannon Medical Center sets their respective work schedules, the employment agreement with their third-party employer (Shannon Clinic) describes full and part-time status, fully compensates them for their work, and retains sole discretion to review and adjust compensation based on annual WRVU production, thus rewarding an individual physician's productivity, or time spent working. *Id.* at 120-123. The language of the employment contract leaves no room for disagreement regarding whether the Clinic retains the full right to control the progress, details, methods, and results of the physician's work. More importantly, the contract specifically describes the physician's relationship with Shannon Medical Center as a mere affiliation. CR.120. Indeed, that is how physicians generally provide care and treatment to patients at hospital facilities, i.e., by having staff

privileges at the facility but not as an employee of the facility. *Drennan*, 905 S.W.2d at 819.

Further, the employment agreement explicitly sets forth physician duties regarding physician clinical practice including the provision of "medical services and treatments to patients of the Clinic…and patients from any managed care plan in which the Clinic is a participating provider." CR.119. It further directs that all records regarding medical services provided by the physician-employee be maintained "in accordance with the Clinic's policies and protocols" and requires the physician to abide by the Clinic's Continuing Medical Education policies. *Id.* at 120. Those contractual obligations with Shannon Clinic controlled the details by which Sickels and Cole worked.

The fourth employment factor considers the time for which the worker is employed. Here, the radiologists are not employed by time for the hospital. Rather, they were employed as full-time employees of Shannon Clinic, requiring devotion of their "full professional time and attention to the performance of his/her duties hereunder for and on behalf of [Shannon] Clinic." Supp.CR; CR.119.

And, as for the fifth employment factor—the method of payment—no evidence shows that Shannon Medical Center ever paid Sickels and Cole for their work as radiologists. Instead, the record proves the radiologists received a salary from Shannon Clinic, their third-party employer, with additional compensation and bonuses. Supp.CR; CR.120-121;123.

In short, these employment factors do not support the concept that Shannon Medical Center employed Sickels and Cole. Indeed, the evidence proved Shannon Clinic employed and paid them. Supp.CR.; CR.119-123. That left Shannon Medical Center as just the facility where the work occurred. The fact that Sickels and Cole were contractually obligated to maintain staff privileges at Shannon Medical Center and abide by the hospital's policies and procedures while using its radiology equipment does not amount to a "right to control" under Texas law. If anything, it shows how Shannon Clinic exercised control over them by making them have staff privileges and comply with those policies and procedures. Thus, their relationship with Shannon Medical Center was, at best, mere independent contractors.

Sickels and Cole also argue that their phone numbers, business cards, work schedules, and caseload, including medical record keeping, also make them employees of Shannon Medical Center. CR.127-32. But even under a "borrowed employee" theory, these operational measures are not enough to convert independent contractor physicians into hospital employees; they do not meet the required threshold of control over the details of their work. See *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex. 2002). What little control Shannon Medical Center exercises over the radiologists—if any—is not enough to negate the contractually established fact that the Clinic is their employer. If anything, these acts only illustrate the cooperative arrangements that must occur between doctors and hospital facilities—they must engage in these cooperative efforts to have a functioning health care facility. But that does not transform the doctors into employees of the hospital. Accordingly, Sickels and Cole were not employees of Shannon Medical Center.

More importantly, if a contract expressly provides for a specific party to retain the legal right to control an employee, then that party is the employer. *Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 226 (Tex.

1963). Courts interpret contract language according to its plain, grammatical meaning unless doing so would defeat the intent of the parties. *Garner v. Corpus Christi Nat'l Bank*, 944 S.W.2d 469, 474 (Tex. App.—Corpus Christi 1997, no writ). Here, the employment agreements provide that Sickels and Cole will be "full-time employee[s]" of Shannon Clinic. That description of them as "employees" "is strong evidence that the parties…intend [the person] to be considered an employee." *Renaissance Med.*, 672 S.W.3d at 912 ("[T]he exclusive use of 'employee' in this case is strong evidence that the parties to the agreement intended for Burke to be considered an employee.").

Sickels and Cole were not employed by the Shannon Medical Center but by Shannon Clinic. Their claims—regardless of how pleaded—are not claims against an employer by an employee under the Labor Code. Instead, they are claims against a non-employer, making them health care liability claims. Tex. Civ. Prac. & Rem. Code § 74.001(a)(13).

## C. Sickels and Cole Failed to Serve Shannon Medical Center with a Chapter 74 Expert Report as Required by Chapter 74 (Issue 3)

When a claim is a health care liability claim, claimants must serve a preliminary expert report and curriculum vitae within 120 days of the

defendant answering the lawsuit. Tex. Civ. Prac. & Rem. Code § 74.351(a). That report must set out, in non-conclusory fashion, the standard of care, breach of the standard of care, and proximate cause. Tex. Civ. Prac. & Rem. Code § 74.351(r)(6); *Baty*, 543 S.W.3d at 693-694; *Jelinek*, 328 S.W.3d at 539. Failure to serve an expert report and curriculum vitae by the deadline requires dismissal of the case with prejudice and entry of an award of attorneys' fees and court costs. Tex. Civ. Prac. & Rem. Code § 74.351(b). If the claimant fails to serve a report and curriculum vitae within the statutory period, courts have no discretion: they must dismiss the health care liability claim with prejudice and award the statutory remedies. *Badiga*, 274 S.W.3d at 685.

Here, Sickels and Cole do not claim that they served an expert report in the traditional sense (that they served a report from an expert along with that expert's curriculum vitae) and instead argue that the "copious number of medical records and reports…illustrate the nature of their injuries as resulting from excess exposure to radiation." CR.72. But those medical records are not an expert report that sets out the standard of care, a breach of the standard of care, and proximate cause from the alleged breach to the claimed injury. Indeed, even Sickels and Cole's

64

characterization of these records only show that the "illustrate" the injuries resulted from excess radiation. *Id*. Such an illustration is not an explanation of the standard of care, breach, and causation.

An adequate expert report is comprised of three elements: (1) it provides a fair summary of the expert's opinions regarding the standard of care; (2) it explains the manner in which the care rendered by the physician failed to meet the standards; and (3) it explains the causal relationship between that failure and the injury, harm, or damages claimed. *E.D. v. Tex. Health Care, P.L.L.C.*, 644 S.W.3d 660, 664 (Tex. 2022). While the report need only be a good-faith effort, *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018), it still must "(1) inform the defendant of the specific conduct called into question and (2) provide a basis for the trial court to conclude the claims have merit." *Baty*, 543 S.W.3d at 693–94. Furthermore, only the information contained within the four corners of the report may be considered when looking for good faith; inferences are not permitted. *Abshire*, 563 S.W.3d, at 223.

A report that merely offers bare conclusions, does not address all the elements (i.e., the applicable standard of care, defendant's breach

thereof, and proximate cause linking the alleged breach to the claimant's injuries), or requires inferences to be made because of its omissions, is not made in good faith. *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002); *Jelinek*, 328 S.W.3d at 539 ("the expert must explain the basis of his statements to link his conclusions to the facts"). In situations such as these, the claimant may not be given an extension to cure. *Scoresby*, 346 S.W.3d at 555–557.

Sickels and Cole note that they "provided well over 3,700 pages of medical records, bills, and reports from various doctors," but those documents do not provide a fair summary of any expert's opinions regarding the standard of care, explain the manner in which Shannon Medical Center breached the standard of care, or explain the causal relationship between that failure and the injury, harm, or damages claimed. That is not a good faith effort to satisfy the expert report requirement. CR.74.

In response to the dismissal motion, Sickels and Cole highlight a few snippets from the more than 3,700 pages of records produced. But those snippets do not explain any of the elements of an expert report. For

66

example, Exhibit T to their response is a one-paragraph that essentially says, in a conclusory fashion, that Dr. Sickels had long-term radiation exposure; that he developed skin cancers, which required amputations; and that he requires long-term care. CR.73, 235. But that does not even say that Sickels developed cancer from over exposure to radiation. Nor does it say that Shannon Medical Center's conduct caused the over-exposure to radiation—let alone that its negligent conduct caused that. In short, even if that were a statement of causation, it does not connect any claimed breach of the standard of care by Shannon Medical Center to causing that injury. The record from Dr. Cheraku attached as Exhibit T does not provide a standard of care, a breach of the standard of care, or a causal connection from the purported breach to the alleged injury. Nor does it provide any explanation of those expert-report elements.

The same problem exists with Exhibit U—a dermatology office note that says that Cole "is a retired radiologist and interventional[ radiologist] and possible exposure to ionizing radiation." CR.236. The report then describes spots and lesions on his hand. Nothing in that record sets out a standard of care, a breach, or a causal connection between the purported breach and the alleged injury. *Id.*

67

Exhibit V is similarly lacking—merely identifying the surgical pathology results from biopsies on Sickels's. hands. CR.237. That report does attach Dr. Cockrell's letter, which is also Exhibit X. *Compare* CR.238-239 *with* CR.305-306. Because it is its own exhibit, that letter will be discussed below. Regardless, nothing in Exhibit V's discussion of the pathology results specifies a standard of care, a breach, or proximate cause.

Finally, Exhibit X is the letter from Dr. Cockrell, who is reviewing the same pathology samples from Sickels's hands. CR.238, 305. Dr. Cockrell describes the first two samples as being cancerous—without any statement related to the issues in the case. *Id.* He then notes that the third sample "revealed features of chronic radiation dermatitis." *Id.* In the next paragraph, he notes that "these changes all have been induced by the prior radiation he was exposed to over the years. The clinical photographs were impressive as well. Patients that have radiation dermatitis may develop abnormal changes in the epidermis because of the altered blood flow and other changes, and it is not uncommon to see crusting and erythema overlying radiation dermatitis which, in my opinion, explains the findings in the last specimen." *Id.* Even giving full

weight to all Dr. Cockrell's statements (and ignoring other potential non-radiation causes for some of the findings listed in the report), they simply do not identify a standard of care, a breach, nor claim that the breach caused the injury. Even this exhibit does not satisfy any element of an expert report.

None of the snippets emphasized in Sickels and Cole's response satisfies the expert-report requirement of Chapter 74. There is no statement describing any standard of care; there is no statement explaining any breach of the standard of care; and there is no statement attributing the purported injuries to a breach in the standard of care. Indeed, none of the records even implicates Shannon Medical Center's conduct in any fashion. At best, these records use passive voice to explain that these radiologists were exposed to radiation. CR.235-237; 305. . But they do not even attribute it to radiation from Shannon Medical Center—let alone to a breach of the standard of care by Shannon Medical Center. The medical records—regardless of how voluminous—do not satisfy the expert-report requirement of Chapter 74.

Along these lines, even if they did, Sickels and Cole never served a curriculum vitae for their expert when serving these medical records.

69

True, one from Dr. Cockrell is attached as Exhibit W to their response to the dismissal motion. CR.240-304. But unlike the medical records, the curriculum vitae is not Bates-labeled, indicating it was not served in discovery. *Compare* CR.235-239; 305-306 *with* CR. 240-304. Thus, Sickels and Cole never served a curriculum vitae as required by Section 74.351, making service of the medical records deficient even if they satisfied the expert-report requirement.

Of course, this only underscores the problems inherent in trying to use the service of medical records as service of an expert report. As Sickels and Cole admit, they served "over 3,700 pages" of medical records. CR.74. They now rely on a handful of pages from those records to claim they satisfied the expert-report requirement—without telling Shannon Medical Center that somewhere buried in that volume of materials was something that satisfied their Chapter 74 obligations. Shannon Medical Center not only had to hunt for those pages never flagged as satisfying the expert-report requirement but presciently predict that they might be used as an expert report.

Shannon Medical Center only had 21 days to object to the sufficiency of any expert report. Tex. Civ. Prac. & Rem. Code § 74.351(a).

That places an impossible burden on Shannon Medical Center— foreseeing that an expert report might be buried among those thousands of pages and realize that these medical records might be used as an expert report. Such laying behind the log (so to speak) should not be permitted. Regardless, these records do not satisfy any element of an expert report, making them fatally deficient. They are not a good faith effort to comply with the expert-report requirement and cannot save Sickels and Cole from the effect of Section 74.351.

If Sickels and Cole truly believed that their claims were not health care liability claims, they had options to avoid dismissal with prejudice and other statutory remedies. First, they could have prophetically obtained an expert report. Second, they could have preliminarily moved to determine whether the claims were health care liability claims—a new tool that the Legislature provided when doubt exists about the nature of the claims asserted against a doctor or health care provider. Tex. Civ. Prac. & Rem. § 74.353. This latter route potentially gives claimants like Sickels and Cole additional time to satisfy the expert-report requirement if a court determines the statute applies. *Id*. (allowing service of a report when required by the later of 120 days after the date of each defendant's

71

original answer or 60 days after the court issues its determination of the statute's applicability); *Tenet Hosps. Ltd. v. Balderrrama*, 705 S.W.3d 256, 259 and n.3 (Tex. App.—El Paso 2024) (reversing trial court's preliminary determination that autopsy-related claims were not health care liability claims and remanding for further proceedings).

Instead, Sickels and Cole opted to do nothing to comply with the statute or challenge its applicability before the deadline expired. Their claims were health care liability claims; they served no expert report by the statutory deadline; and the statute mandates dismissal with prejudice and an award of statutory remedies.

## Conclusion and Prayer

For the reasons explained, Sickels and Cole's claims against Shannon Medical Center were health care liability claims because their safety-based claims satisfy the elements of a health care liability claim, have a substantial nexus to the provision of health care, and require expert testimony. Shannon Medical Center did not employ Sickels and Cole. As health care liability claimants, Section 74.351 of the Texas Civil Practice & Remedies Code mandated that Sickels and Cole serve an expert report and curriculum vitae on Shannon Medical Center within

72

120 days of its answer. They did not. None of the (voluminous) medical records served satisfies the elements of an expert report under Chapter 74. Thus, Sickels and Cole did not satisfy Chapter 74's expert-report requirement. The trial court had only one option—to grant Shannon Medical Center's dismissal motion and award statutory remedies of attorneys' fees and court costs. The trial court reversibly erred by denying that motion. This Court should reverse.

Appellant Shannon Medical Center, therefore, requests that this Court reverse the denial of the dismissal motion, render judgment dismissing Appellees Michael Sickels and James Christopher Cole's case with prejudice, and remanding this case to the trial court for entry of an award of attorneys' fees and court costs in favor of Appellant Shannon Medical Center and against Appellees Michael Sickels and James Christopher Cole—as required by Section 74.351(b) of the Texas Civil Practice & Remedies Code. Appellant Shannon Medical Center further requests that this Court tax costs against Appellees Michael Sickels and James Christopher Cole. And Appellant Shannon Medical Center requests such further relief to which it may be entitled.

Respectfully submitted,

*/s/ David M. Walsh IV*

David M. Walsh IV (Lead)
State Bar No. 00791874
dwalsh@katxlaw.com
Jeffery M. Kershaw
State Bar No. 24053279
jkershaw@katxlaw.com
Ana P. Romano
State Bar No. 24150010
aromano@kaktxlaw.com
Jaqueline A. Cockrane
State Bar No. 24142790
jcochrane@kaktxlaw.com
Kershaw Anderson King, PLLC
12400 Coit Rd., Suite 800 (Main)
Dallas, Texas 75251
-and-
5113 Southwest Parkway, Suite 200
Austin, TX 78735
(214) 347-4993 – Telephone (Dallas)
(512) 400-0334 – Telephone (Austin)
(214) 615-7361 – Facsimile

**Counsel for Appellant**
**Shannon Medical Center**

74

## Certificate of Compliance

Relying on the word count in Microsoft Word that is part of the suite of programs in Microsoft Office 365, I certify that this computer-generated document contains 11,855 words, not including the caption, identity of parties and counsel, table of contents, index of authorities, statement of the case, statement regarding oral argument, issue presented, signature, proof of service, certificate of compliance, and appendix. The text for the body of the document is in 14-point font, and any footnotes are in 12-point font.

*/s/ David M. Walsh IV*
**David M. Walsh IV**

## Certificate of Service

I certify that on November 26, 2025, I served a true and correct copy of this document on all counsel of record via the e-filing system.

Kyle Dreyer
legal@mytexasfirm.com
Josh A. Flippin
legal@mytexasfirm.com
Burress Law, PLLC
6952 Mediterranean Drive
McKinney, Texas 75072
**Counsel for Appellees Michael Sickels and James Christopher Cole**

Matthew J. Kita
matt@mattkita.com
3110 Webb Ave Ste 150
Dallas, TX 75205-3503
**Counsel for Appellees Michael Sickels and James Christopher Cole**

*/s/ David M. Walsh IV*
**David M. Walsh IV**

| | | | |
|---|---|---|---|
| MICHAEL SICKELS and JAMES CHRISTOPHER COLE, | § § § | | IN THE DISTRICT COURT |
| Plaintiff, | § § | | |
| VS. | § | | 51st JUDICIAL DISTRICT |
| SHANNON MEDICAL CENTER, | § § | | |
| Defendant. | § § § | | TOM GREEN COUNTY, TEXAS |
| | § | | |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

After considering Defendant's Motion to Dismiss, the evidence on file, record in general and argument of counsel, this Court is of the opinion that this Motion be DENIED.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss is hereby DENIED.

SIGNED this _____ day of _____ 8/29/2025 _____, 2025.

_____
JUDGE PRESIDING

# Tex. Civ. Prac. & Rem. Code § 74.001

*** This document is current through the 2025 Regular Session and the 2nd C.S. of the 89th Legislature. ***

*Texas Statutes & Codes Annotated by LexisNexis®* > *Civil Practice and Remedies Code* > *Title 4 Liability in Tort (Chs. 71 — 100D)* > *Chapter 74 Medical Liability (Subchs. A — L)* > *Subchapter A General Provisions (§§ 74.001 — 74.004)*

## Sec. 74.001. Definitions.

(a) In this chapter:

(1) "Affiliate" means a person who, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with a specified person, including any direct or indirect parent or subsidiary.

(2) "Claimant" means a person, including a decedent's estate, seeking or who has sought recovery of damages in a health care liability claim. All persons claiming to have sustained damages as the result of the bodily injury or death of a single person are considered a single claimant.

(3) "Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of the person, whether through ownership of equity or securities, by contract, or otherwise.

(4) "Court" means any federal or state court.

(5) "Disclosure panel" means the Texas Medical Disclosure Panel.

(6) "Economic damages" has the meaning assigned by *Section 41.001*.

(7) "Emergency medical care" means bona fide emergency services provided after the sudden onset of a medical or traumatic condition manifesting itself by acute symptoms of sufficient severity, including severe pain, such that the absence of immediate medical attention could reasonably be expected to result in placing the patient's health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part. The term does not include medical care or treatment that occurs after the patient is stabilized and is capable of receiving medical treatment as a nonemergency patient or that is unrelated to the original medical emergency.

(8) "Emergency medical services provider" means a licensed public or private provider to which Chapter 773, Health and Safety Code, applies.

**(9)** "Gross negligence" has the meaning assigned by *Section 41.001*.

**(10)** "Health care" means any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement.

**(11)** "Health care institution" includes:

**(A)** an ambulatory surgical center;

**(B)** an assisted living facility licensed under Chapter 247, Health and Safety Code;

**(C)** an emergency medical services provider;

**(D)** a health services district created under Chapter 287, Health and Safety Code;

**(E)** a home and community support services agency;

**(F)** a hospice;

**(G)** a hospital;

**(H)** a hospital system;

**(I)** an intermediate care facility for individuals with an intellectual disability or a home and community-based services waiver program for individuals with an intellectual disability adopted in accordance with Section 1915(c) of the federal Social Security Act (*42 U.S.C. Section 1396n*), as amended;

**(J)** a nursing home; or

**(K)** an end stage renal disease facility licensed under *Section 251.011, Health and Safety Code*.

**(12)**

**(A)** "Health care provider" means any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including:

**(i)** a registered nurse;

**(ii)** a dentist;

**(iii)** a podiatrist;

**(iv)** a pharmacist;

**(v)** a chiropractor;

**(vi)** an optometrist;

   **(vii)**  a health care institution; or

   **(viii)**  a health care collaborative certified under Chapter 848, Insurance Code.

  **(B)**  The term includes:

   **(i)**  an officer, director, shareholder, member, partner, manager, owner, or affiliate of a health care provider or physician; and

   **(ii)**  an employee, independent contractor, or agent of a health care provider or physician acting in the course and scope of the employment or contractual relationship.

**(13)**  "Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract. The term does not include a cause of action described by *Section 406.033(a) or 408.001(b), Labor Code*, against an employer by an employee or the employee's surviving spouse or heir.

**(14)**  "Home and community support services agency" means a licensed public or provider agency to which Chapter 142, Health and Safety Code, applies.

**(15)**  "Hospice" means a hospice facility or activity to which Chapter 142, Health and Safety Code, applies.

**(16)**  "Hospital" means a licensed public or private institution as defined in Chapter 241, Health and Safety Code, or licensed under Chapter 577, Health and Safety Code.

**(17)**  "Hospital system" means a system of hospitals located in this state that are under the common governance or control of a corporate parent.

**(18)**  "Intermediate care facility for individuals with an intellectual disability " means a licensed public or private institution to which Chapter 252, Health and Safety Code, applies.

**(19)**  "Medical care" means any act defined as practicing medicine under *Section 151.002, Occupations Code*, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient during the patient's care, treatment, or confinement.

**(20)**  "Noneconomic damages" has the meaning assigned by *Section 41.001*.

**(21)**  "Nursing home" means a licensed public or private institution to which Chapter 242, Health and Safety Code, applies.

**(22)** "Pharmacist" means one licensed under Chapter 551, Occupations Code, who, for the purposes of this chapter, performs those activities limited to the dispensing of prescription medicines which result in health care liability claims and does not include any other cause of action that may exist at common law against them, including but not limited to causes of action for the sale of mishandled or defective products.

**(23)** "Physician" means:

**(A)** an individual licensed to practice medicine in this state;

**(B)** a professional association organized under the Texas Professional Association Act (Article 1528f, Vernon's Texas Civil Statutes) by an individual physician or group of physicians;

**(C)** a partnership or limited liability partnership formed by a group of physicians;

**(D)** a nonprofit health corporation certified under *Section 162.001, Occupations Code*; or

**(E)** a company formed by a group of physicians under the Texas Limited Liability Company Act (Article 1528n, Vernon's Texas Civil Statutes).

**(24)** "Professional or administrative services" means those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs.

**(25)** "Representative" means the spouse, parent, guardian, trustee, authorized attorney, or other authorized legal agent of the patient or claimant.

**(b)** Any legal term or word of art used in this chapter, not otherwise defined in this chapter, shall have such meaning as is consistent with the common law.

## History

Enacted by *Acts 2003, 78th Leg., ch. 204 (H.B. 4), § 10.01*, effective September 1, 2003; am. Acts 2011, 82nd Leg., 1st C.S., ch. 7 (S.B. 7), § 4.02, effective September 1, 2011; *Acts 2015, 84th Leg., ch. 728 (H.B. 1403), § 1*, effective September 1, 2015; *Acts 2023, 88th Leg., ch. 30 (H.B. 446), § 1.01*, effective September 1, 2023.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 All rights reserved.

Tex. Civ. Prac. & Rem. Code § 74.001

*\*\*\* This document is current through the 2025 Regular Session and the 2nd C.S. of the 89th Legislature. \*\*\**

*Texas Statutes & Codes Annotated by LexisNexis®    >    Civil Practice and Remedies Code*
*>    Title 4 Liability in Tort (Chs. 71 — 100D)    >    Chapter 74 Medical Liability (Subchs. A — L)*
*>    Subchapter H Procedural Provisions (§§ 74.351 — 74.353)*

## Sec. 74.351. Expert Report.

**(a)** In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed or a later date required under *Section 74.353*, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived.

**(b)** If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:

**(1)** awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

**(2)** dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

**(c)** If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency. If the claimant does not receive notice of the court's ruling granting the extension until after the applicable deadline has passed, then the 30-day extension shall run from the date the plaintiff first received the notice.

**(d) to (h)** [Reserved].

**(i)** Notwithstanding any other provision of this section, a claimant may satisfy any requirement of this section for serving an expert report by serving reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician or health care provider, such as issues of liability and causation. Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider.

**(j)** Nothing in this section shall be construed to require the serving of an expert report regarding any issue other than an issue relating to liability or causation.

**(k)** Subject to Subsection (t), an expert report served under this section:

**(1)** is not admissible in evidence by any party;

**(2)** shall not be used in a deposition, trial, or other proceeding; and

**(3)** shall not be referred to by any party during the course of the action for any purpose.

**(l)** A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6).

**(m) to (q)** [Reserved].

**(r)** In this section:

**(1)** "Affected parties" means the claimant and the physician or health care provider who are directly affected by an act or agreement required or permitted by this section and does not include other parties to an action who are not directly affected by that particular act or agreement.

**(2)** "Claim" means a health care liability claim.

**(3)** [Reserved].

**(4)** "Defendant" means a physician or health care provider against whom a health care liability claim is asserted. The term includes a third-party defendant, cross-defendant, or counterdefendant.

**(5)** "Expert" means:

**(A)** with respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care, an expert qualified to testify under the requirements of *Section 74.401*;

**(B)** with respect to a person giving opinion testimony regarding whether a health care provider departed from accepted standards of health care, an expert qualified to testify under the requirements of *Section 74.402*;

**(C)** with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence;

**(D)** with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a dentist, a dentist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence;

**(E)** with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a podiatrist, a podiatrist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence; or

**(F)** with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a chiropractor, a chiropractor or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence.

**(6)** "Expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

**(s)** Until a claimant has served the expert report and curriculum vitae as required by Subsection (a), all discovery in a health care liability claim is stayed except for the acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's health care through:

**(1)** written discovery as defined in Rule 192.7, Texas Rules of Civil Procedure;

**(2)** depositions on written questions under *Rule 200, Texas Rules of Civil Procedure*; and

**(3)** discovery from nonparties under *Rule 205, Texas Rules of Civil Procedure*.

**(t)**  If an expert report is used by the claimant in the course of the action for any purpose other than to meet the service requirement of Subsection (a), the restrictions imposed by Subsection (k) on use of the expert report by any party are waived.

**(u)**  Notwithstanding any other provision of this section, after a claim is filed all claimants, collectively, may take not more than two depositions before the expert report is served as required by Subsection (a).

## History

Enacted by *Acts 2003, 78th Leg., ch. 204 (H.B. 4), § 10.01*, effective September 1, 2003; am. *Acts 2005, 79th Leg., ch. 635 (H.B. 2645), § 1*, effective September 1, 2005; am. *Acts 2013, 83rd Leg., ch. 870 (H.B. 658), § 2*, effective September 1, 2013; *Acts 2021, 87th Leg., ch. 167 (S.B. 232), § 2*, effective September 1, 2021; *Acts 2023, 88th Leg., ch. 63 (S.B. 2171), § 1*, effective September 1, 2023.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

## Sec. 74.353. Preliminary Determination for Expert Report Requirement.

**(a)** On motion of a claimant filed not later than 30 days after the date each defendant's original answer is filed, a court may issue a preliminary determination regarding whether a claim made by the claimant is a health care liability claim for the purposes of *Section 74.351*.

**(b)** If a court determines under Subsection (a) or (c) that a claim is a health care liability claim for purposes of *Section 74.351*, the claimant shall serve an expert report as required by *Section 74.351* not later than the later of:

   **(1)** 120 days after the date each defendant's original answer is filed;

   **(2)** 60 days after the date the court issues the preliminary determination under Subsection (a) or (c); or

   **(3)** a date agreed to in writing by the affected parties.

**(c)** If a court does not issue a preliminary determination under Subsection (a) before the 91st day after the date that a claimant files a motion under that subsection, the court shall issue a preliminary determination that the claim is a health care liability claim for the purposes of *Section 74.351*.

**(d)** A preliminary determination under this section is subject to interlocutory appeal by either the claimant or defendant.

**(e)** If on interlocutory appeal an appellate court reverses a trial court's preliminary determination that a claim is not a health care liability claim, the claimant shall serve an expert report as required by *Section 74.351* not later than 120 days after the date that the appellate court issues an opinion reversing the preliminary determination.

**(f)** A preliminary determination under this section applies only to the issue of whether a claimant is required to serve an expert report under *Section 74.351*.

## History

*Acts 2021, 87th Leg., ch. 167 (S.B. 232), § 3*, effective September 1, 2021.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

**End of Document**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

David Walsh on behalf of David Walsh
Bar No. 791874
dwalsh@katxlaw.com
Envelope ID: 108518438
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellant's Brief
Status as of 12/1/2025 7:17 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kyle Dreyer | 6119500 | kdreyer@mytexasfirm.com | 11/26/2025 8:28:49 PM | SENT |
| David Walsh | | dwalsh@katxlaw.com | 11/26/2025 8:28:49 PM | SENT |
| Jeffery M.Kershaw | | kalawefiling@katxlaw.com | 11/26/2025 8:28:49 PM | SENT |
| E-Service KAK | | e-service@kaktxlaw.com | 11/26/2025 8:28:49 PM | SENT |
| Laurie Stroh | | lstroh@kaktxlaw.com | 11/26/2025 8:28:49 PM | SENT |
| Jacqueline Cochrane | | jcochrane@kaktxlaw.com | 11/26/2025 8:28:49 PM | SENT |
| Matthew Kita | 24050883 | matt@mattkita.com | 11/26/2025 8:28:49 PM | SENT |
| Josh Flippin | | legal@mytexasfirm.com | 11/26/2025 8:28:49 PM | SENT |
| Ana Romano | | aromano@kaktxlaw.com | 11/26/2025 8:28:49 PM | ERROR |